Manuel **PARRA GONZALES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 08–87–00234–CR.

Court of Appeals of Texas,
El Paso.

Aug. 10, 1988.

Jeffrey Hinkley, Midland, for appellant.

Al W. Schorre, Jr., Dist. Atty., Randall L. Fluke, Asst. Dist. Atty., Midland, for appellee.

OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

WOODARD, Justice.

This is an appeal from a jury conviction for voluntary manslaughter, a lesser included offense of the indicted charge of murder. The jury assessed punishment at twenty years' imprisonment. We affirm.

■ Point of Error No. One asserts that the Appellant was improperly forced to trial less than ten days after return of the operative indictment, in violation of Tex. Code Crim.Pro.Ann. arts. 27.11 and 27.12 (Vernon 1966). The offense was committed on April 23, 1987. Appellant was released on bond on May 4, 1987. On May 13, 1987, he was indicted for murder under Tex.Penal Code Ann. sec. 19.02(a)(1) (Vernon 1974). He was not rearrested after indictment. An arraignment was held on May 21. On August 13, he was reindicted, adding in a second paragraph, an alternative theory of guilt under Section 19.02(a)(2). Again, he remained on bond. On August 20, he was rearraigned and received for the first time a copy of the new indictment. Trial was set for August 25. On August 20 and again on August 25, Appellant sought continuances based upon his asserted right to ten days to prepare written pleadings in response to the new indictment. Both requests were denied.

Appellant relies upon three opinions for his position: *Oliver v. State*, 646 S.W.2d 242 (Tex.Crim.App.1983); *Johnson v. State*, 567 S.W.2d 214 (Tex.Crim.App.1978); *Johnson v. State*, 702 S.W.2d 691 (Tex. App.—Houston [14th Dist.] 1985, PDRR) (NOTE: writ history currently inaccurately reported in *1988 Texas Writs of Error and Discretionary Review Tables* ). ■ We find that the three cases are distinguishable from the present case and that the record before us discloses no violation of the statutory preparation time. The opinion of the Court of Criminal Appeals in the first *Johnson* case emphasized that the defendant had been continuously incarcerated until the time of trial, covering the dates of

both the initial indictment and reindictment. He was therefore entitled to be served with copies of both the indictment and reindictment and could not be forced to trial within ten days of such service. Tex. Code Crim.Pro.Ann arts. 25.01 and 27.12 (Vernon 1966). In *Johnson,* the reindictment occurred six days prior to trial. In the case before us, the Appellant was not incarcerated at the time of reindictment and, while entitled to a copy upon request, was not entitled to formal service of a copy under Article 25.01. Hence Article 27.12 was not triggered. Furthermore, the reindictment occurred on August 13, more than ten days before trial.

In *Oliver* and the second *Johnson* case, the opinions do not reflect whether the defendants were incarcerated at the time new charging instruments were filed. While Article 27.11 on its face dates the ten day preparation time from the time of arrest, in non-arrest cases, the date the new charging instrument is filed is used as the starting point. In *Oliver,* this occurred on the very day of trial. In *Johnson,* the reindictment took place four days before trial. In neither case did the appellate court rely upon Article 27.12 or relate the ten day preparation time to any formal service of the new charging instrument. In the present case, Appellant was not incarcerated and not entitled to be served with a copy of the new indictment. It was filed more than ten days prior to trial. No violation of Articles 27.11 and 27.12 is shown. Point of Error No. One is overruled.

■ In Point of Error No. Two, Appellant contends that the State improperly exposed to the jury an excised portion of State's Exhibit No. One, excluded by the granting of a pretrial defense motion in limine. The exhibit originally consisted of an 8–by–10–inch posed color photograph of the deceased and his wife, in a cardboard folder/frame. Before trial, the defense sought to limit the use of the photograph contending that it would prejudice the jury by appealing to their sympathy. The motion was granted and the State was allowed to utilize the photograph only after the wife was cut from the picture. Apparently, the investigator who cut the photograph inserted the excised portion showing the wife behind the portion showing the deceased in the folder. The prosecutor used the approved portion to establish the identity of the victim with one of the first officers on the scene, one of the attending paramedics and the victim's wife. After Officer Hunnicutt identified the photograph, it was passed to the jury. As the prosecutor was about to display it to the paramedic, Robert O'Donnell, he retrieved it from the jury and first noticed that the excised portion had been inserted behind the accepted portion. A small portion, not revealing the wife, was protruding at the bottom of the photograph. The prosecutor advised the court and defense attorneys of what had transpired. The court found that the configuration and manner in which the folder was passed to the jury did not reveal the wife. A motion for mistrial was denied.

The record does not disclose an intentional violation of the court's ruling on the motion in limine, nor does the record disclose that the concealed portion of the photograph was observed by any juror. The portion which was approved for introduction was examined by the defense prior to tender to the jury. There was no objection. That portion clearly indicates that the photograph had been cut and that the excised portion bore the likeness of a woman, her upper arm, sleeve of her dress and a portion of the skirt of her dress clearly displayed within the approved portion.

The court had discretion to admit the entire photograph, rejecting the claim of prejudice and appeal to jury sympathy. *Milton v. State,* 599 S.W.2d 824, 827 (Tex. Crim.App.1980); *Alford v. State,* 505 S.W. 2d 813, 815 (Tex.Crim.App.1974). He chose to limit the exhibit, but *Alford* and *Milton* would support a conclusion that even if the jury saw the portion depicting the wife, the error would not necessitate reversal. The victim's wife testified as to their marital status and the length of marriage. The challenged portion of the photograph reveals nothing beyond what was otherwise in evidence before the jury. In *Brooks v.*

*State*, 599 S.W.2d 312, 318 (Tex.Crim.App. 1979), the State planned to utilize a photograph of the murder victim, his wife and one of his two small children. As in the present case, the trial judge there granted a defense motion in limine to remove the small child from the picture. Apparently, the manner in which the photograph was cut left a clearly discernable outline of a small child in the exhibit exposed to the jury. The Court of Criminal Appeals found no reversible error since the mother had testified, without objection, as to her marriage to the deceased and the existence of their two small children. The same is true in this case. Point of Error No. Two is overruled.

█ Point of Error No. Three complains of the exclusion of a private "presentence investigation and recommendation" generated by Paul Cromwell, Ph.D., as well as limitations upon the testimony of Cromwell. Cromwell's report was based upon five and one-half hours of interviews with Appellant and his family. Cromwell's analysis was intended to support Appellant's bid for probation. Cromwell's conclusions were based upon his extensive educational background in criminology and his past service at state and federal levels with parole and probation agencies. The court would not admit Cromwell's written report. He permitted testimony as to Cromwell's training and experience, the manner in which he acquired his information in this case, his conclusion that Appellant was a good candidate for successful completion of probation, and that in his opinion Appellant would be submissive to the demands of probation supervision. Cromwell was not permitted to express the underlying hearsay "facts" upon which his conclusion was based (such as family and employment history), nor his opinion that Appellant would not pose a continuing threat to society, nor his opinion that Appellant was "worthy" of probation.

We find no error in the limitations imposed by the court. In fact, while not before us, we have serious misgivings as to the permitted scope of testimony by Cromwell. Appellant relies upon Tex.R.Crim.

Evid. 401, in asserting the relevance of Cromwell's testimony to the jury determination of whether or not to grant probation. Reliance on Tex.R.Crim.Evid. 701, et seq., is implicit in the proffer of Cromwell's report and testimony. Satisfaction of these rules is only one hurdle in the path of admissibility. The evidentiary rules establish proper modes of proof but are not the only provisions defining the scope of evidentiary inquiry. Despite logical relevance, a proffer may lack legal admissibility. Tex.R.Crim.Evid. 402 and 403. For example, much of Cromwell's evaluation is logically related to Appellant's character, a primary issue within the probation context and a specified area of inquiry under Tex. Code Crim.Pro.Ann art. 37.07 (Vernon 1981 and Supp.1988). Yet, under Tex.R.Crim. Evid. 405(a), the mode of proof attempted through Cromwell's interviews, analysis and opinion testimony was not proper. On *the other hand, other portions of the Cromwell* proffer may well have satisfied Tex.R. Crim.Evid. 401 and 701, et seq., and yet were outside the permissible scope of inquiry under Article 37.07 of the Code of Criminal Procedures. In a non-capital case, the punishment hearing is limited to criminal record of the defendant (not applicable here), reputation, character (not properly proven by Cromwell), and mitigation. Article 37.07 does provide for background evaluations of defendants for punishment and probation purposes, but limits their use to cases in which the court assesses punishment. Tex.Code Crim.Pro.Ann. art. 37.07 sec. 3(d) (Vernon Supp.1988). That subsection refers to reports provided for in Article 42.12, Section 4 (Vernon Supp.1988). Under the probation statute, a presentence investigation is only authorized in judicial assessments of punishment. Article 42.12 Section 4(h) provides for background evaluations as to appropriateness of drug or alcohol rehabilitation in intoxicated driving cases. Once again, however, that investigative material is expressly excluded from jury consideration. Under Subsections (h)(2)–(h)(4), the evaluation is to be made after conviction and before sentencing if the court assesses punishment, *after sentencing* and before entry of judgment *if*

*the jury assesses punishment* and *after probation is granted*, if the evaluation is required as a condition of probation.

The express limitations of Articles 37.07 and 42.12 Section 4 with regard to such background investigations clearly evidences an intent to exclude such evaluations from the jury. We perceive a traditional basis for this design. Exposure of such expert evaluations, founded in large measure upon hearsay and potentially self-serving information provided by the defendant and his family, for judicial consideration may be made with the expectation that the judge will not be overborne by the expert status of the evaluator or unduly influenced by underlying hearsay data. On the other hand, our entire body of trial and evidentiary rules is intended to circumscribe and sanitize the jury's consideration of the facts to which the law is to be applied. There is no equivalent presumption that lay jurors disregard hearsay or other improper evidence. Our rules are intended to prevent such undue influences upon their deliberation. By the same token, expert testimony is permissible only to aid the jury in its decision, not to supplant that decision. *Holloway v. State,* 613 S.W. 2d 497, 500–501 (Tex.Crim.App.1981). Jury service is an often onerous burden, frequently rendered more onerous by having to take responsibility for placing individuals in prison and deciding the length of that incarceration. The use of punishment "experts" as witnesses taps into a natural reluctance on the part of jurors to exercise their punishment authority, and consequently serves as an excessive inducement for the jury to abdicate their responsibility and defer to the recommendation of a so-called expert. *See Dunnington v. State,* 740 S.W.2d 896, 898 (Tex.App.—El Paso 1987, PDRR). Such a danger is to be scrupulously avoided to insure the integrity of the jury process and to avoid counterproductive "battles-of-experts." We recognize that under Tex.R.Crim.Evid. 704 experts may now offer opinions on ultimate issues and that the objection of "invading the promise of the jury" has lost its significance. Nonetheless, there are still areas which are to be left exclusively for juror opinions, to be voiced within the confines of deliberation, unfettered by witness opinion, and founded upon raw evidentiary data properly filtered by the Code of Criminal Procedures and Rules of Criminal Evidence. *See Garcia v. State,* 712 S.W.2d 249, 252 (Tex.App.—El Paso 1986, PDRR) (impropriety of expert testimony on credibility of witnesses). The limited use of background evaluations and recommendations sanctioned by Articles 37.07 and 42.12 Section 4 is consonant with these principles; the Cromwell proffer was not. The factual information upon which Cromwell based his evaluation was not within his personal knowledge but was gained through interviews with Appellant and his family. Nor was this information otherwise before the jury. The same was true with regard to the inadmissible "expert" evaluation and opinion of Dr. Grigson in *Holloway,* 613 S.W.2d at 502–503 (danger to society opinion). Cromwell's opinion that there were adequate local probation treatment programs to handle the Appellant did not amount to mitigation evidence and was inadmissible. *Brown v. State,* 741 S.W.2d 453 (Tex.Crim.App.1987); *Logan v. State,* 455 S.W.2d 267 (Tex.Crim.App.1970). The attempt to introduce Cromwell's conclusion as to whether Appellant was "worthy" of probation clearly moves in the direction of supplanting the jury, and is well down the road to the "battle of experts" dismissed in *Brown* by Judge Clinton's dissent. *Brown,* 741 S.W.2d at 456–457. Point of Error No. Three is overruled.

The judgment is affirmed.